519 S.E.2d 382

**David Toran PEEPLES**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1261-97-2.**

Court of Appeals of Virginia,
Richmond.

Oct. 5, 1999.

---

(Kieran T. Grennan; Grennan, Tondrowski, White and Wicker, Affiliated Law Offices, Richmond), for appellant.

Eugene Murphy, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: FITZPATRICK, C.J., and BENTON, COLEMAN, WILLIS, ELDER, BRAY, ANNUNZIATA, BUMGARDNER and LEMONS, JJ.

## UPON A REHEARING EN BANC

BUMGARDNER, Judge.

A panel of this Court reversed David Toran Peeples's convictions of aggravated malicious wounding and use of a firearm in the commission of the aggravated malicious wounding. *See Peeples v. Commonwealth,* 28 Va.App. 360, 504 S.E.2d 870 (1998). Upon rehearing *en banc,* we conclude that the trial court did not err by excluding the expert witness' testimony regarding Peeples's mental state. Accordingly, we affirm the convictions.

The victim and Richard Harvey were walking along the street when the defendant and a friend drove by, parked, got out, and approached them. The defendant asked the two if they wanted to purchase a "blunt," which is a cigar filled with marijuana. They each gave the defendant a dollar, and the defendant rolled a blunt. The defendant told the victim and Harvey that he wanted them to share it with him. When they declined, the defendant refused to give the blunt to them. The victim and Harvey asked for their money back. They exchanged words, the victim grabbed the blunt, and the defendant went home.

The defendant returned a few minutes later, and the argument resumed. As the victim and the defendant walked into an alley to light the blunt, the defendant stepped in front of the victim and, as they stood face to face, pulled out a gun. The victim put his hands up in the air, but the defendant shot

him twice, once in each leg. The victim fell to the ground as Harvey, who was standing nearby, asked the defendant what he was doing. The defendant replied, "Y'all want to fuck with me?" and chased Harvey down the street. The defendant returned quickly to the victim, who was lying on the ground, and shot him three more times, twice in the abdomen and once in the head. The defendant ran off when a woman screamed, but he did not return home that day or contact the police until two and a half weeks later.

The victim survived but lost sight in his right eye. The surgeon who operated on him testified that the shots to his legs had a "straight-through trajectory," and the shots to his abdomen and head had a "downward trajectory." The doctor said that the shot to the head was "fired from a point to the right and behind" and it appeared to come from behind the ear and exit through the nose.

The defendant testified in his own defense. He maintained that the victim and Harvey asked him to change a twenty-dollar bill. When the defendant displayed his money while making change for them, the two said they were going to take it. Harvey "acted like he had a gun." The defendant said that he was scared, thought he was being robbed, and believed he would be shot because the victim had a reputation for violence and other people had been robbed in the neighbor-hood. The defendant said he "kind of panicked, you know. I started shooting. I'm not sure how many shots were fired." When asked why he shot the victim if he thought Harvey had the gun, the defendant responded that he was scared and "never aimed at anybody."

At trial, the defendant proffered that Dr. Michelle Nelson, a psychologist, would testify that the defendant was mildly mentally retarded and that because of "the particular way that [his] mind is affected, he has extreme difficulty correctly interpreting social situations. He tends to miss the point exactly what is happening and reacts inappropriately."[1] The

---

1. Dr. Nelson did testify at sentencing that the defendant was cognitively impaired and was mentally retarded with an IQ of 55. She said,

trial court granted the Commonwealth's motion to exclude the expert testimony from the guilt phase of the trial.

The jury convicted the defendant of aggravated malicious wounding and the use of a firearm in the commission of that offense. The trial court imposed sentence because the defendant was a juvenile. *See* Code § 16.1–272. It sentenced him to twenty-five years in the penitentiary for aggravated malicious wounding and three years for use of a firearm. On appeal, the defendant argues that the trial court erred in excluding Dr. Nelson's testimony because it supported his contention that he acted in the heat of passion, thereby rebutting the presumption of malice, and supported his evidence that he acted in self-defense.

When the defendant asserted the defenses of heat of passion and self-defense, he conceded he shot the victim. He raised the issues of whether he acted while reasonably provoked by fear or rage and whether he reasonably feared death or serious bodily injury. The defendant argues that his point of view, state of mind, and perception of events were relevant to the issues of reasonable provocation and reasonable fear. He contends that Dr. Nelson's testimony was admissible to prove his mental condition and his perception of the situation that he confronted.

■ We find the rationale of *Stamper v. Commonwealth,* 228 Va. 707, 324 S.E.2d 682 (1985), applies to the particular evidence proffered in the instant case. Stamper proffered "psychiatric testimony to prove that he was manic-depressive, in a manic state on the date of the offense, and consequently incapable of forming the intent to distribute" marijuana. *Id.* at 715–16, 324 S.E.2d at 687. In upholding the trial court's rejection of the evidence, the Supreme Court noted that some jurisdictions admit expert testimony of a defendant's mental state, short of insanity, to show diminished capacity. Other

"Peeples is likely to interpret social situations differently than most people.... [H]e has problems with impulse control, he's likely to jump to conclusions that other people wouldn't necessarily jump to."

jurisdictions admit it as circumstantial evidence that the requisite specific intent did not exist. The Court specifically declined to adopt a diminished capacity theory of criminal responsibility, which it characterized as a fundamental change in the common law theory of criminal responsibility.

The Court explained its fundamental reason for excluding evidence of a defendant's mental state, short of insanity: the state of the art in medicine and psychiatry is not sufficiently stable and established to form the basis for determining criminal responsibility. Unless a person falls outside the borderline demarcating legal sanity, he possesses sufficient reason to be responsible for his crimes.

There is, however, a more fundamental reason for the exclusion of such evidence. The state of knowledge in the fields of medicine and psychiatry is subject to constant advance and change. The classifications and gradations applied to mental illnesses, disorders, and defects are frequently revised. The courts cannot, and should not, become dependent upon these subtle and shifting gradations for the resolution of each specific case. Instead, the common law, many years ago, fixed a stable and constant standard of mental competence as the criterion for the determination of criminal responsibility. A person whose mental state falls outside the borderline drawn by that standard is deemed legally insane. All persons inside that borderline are "presumed to be sane, and to possess a sufficient degree of reason to be responsible for [their] crimes." For the purposes of determining criminal responsibility a perpetrator is either legally insane or sane; there is no sliding scale of insanity. The shifting and subtle gradations of mental illness known to psychiatry are useful only in determining whether the borderline of insanity has been crossed. Unless an accused contends that he was beyond that borderline when he acted, his mental state is immaterial to the issue of specific intent. Accordingly, we hold that evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the

issue of guilt. The trial court committed no error in excluding it at the guilt phase of the trial.

*Stamper*, 228 Va. at 716–17, 324 S.E.2d at 688 (alteration in original) (citations omitted).

In *Smith v. Commonwealth*, 239 Va. 243, 389 S.E.2d 871, *cert. denied*, 498 U.S. 881, 111 S.Ct. 221, 112 L.Ed.2d 177 (1990), the defendant was charged with capital murder. He offered expert testimony to show that he suffered from alcohol dependence and borderline personality disorder, had the ability to premeditate, but could not follow through on his intentions. The defendant argued that *Stamper* did not control because the expert testimony of his inability to premeditate was the equivalent of the accepted defense of inability to premeditate because of voluntary intoxication. Smith asserted it would be " 'barbarous and insensible . . . to extend a more lenient legal rule to the case of a drunkard . . . than to the case of a poor demented creature.' " *Id.* at 260, 389 S.E.2d at 880 (quoting *State v. Noel*, 102 N.J.L. 659, 133 A. 274, 285 (1926)). The Court rejected the argument and reiterated the holding in *Stamper* that the state of knowledge in the fields of medicine and psychiatry was subject to constant change, and the classifications and gradations were too subtle and shifting. *See id.*

In *Jenkins v. Commonwealth*, 244 Va. 445, 423 S.E.2d 360 (1992), the defendant was also charged with capital murder. He offered evidence that he had been physically and sexually abused as a child on the crucial question of his state of mind for both degree of homicide and eligibility for the death penalty. Specifically he offered evidence of a clinical psychologist that he suffered from "child sexual abuse accommodation syndrome." *See id.* at 456, 423 S.E.2d at 367. The expert would testify that the defendant fit the behavior patterns and thought processes of one with that syndrome. The trial court had excluded the evidence as violating *Stamper*. The Supreme Court affirmed the conviction but did not need to address what it called "the *Stamper* principle" because the Court found the evidence insufficient as a matter of law to

raise a manslaughter defense. *See id.* at 457, 423 S.E.2d at 367.

This Court applied the principle of *Stamper* and *Smith* in *Bowling v. Commonwealth,* 12 Va.App. 166, 403 S.E.2d 375 (1991). Bowling sought to introduce psychiatric evidence of his mental state at the time of the offense. He offered evidence that he functioned at the lower limits of the adult intelligence range and argued that evidence of diminished capacity was relevant to the elements of premeditation and deliberation. He did not put his sanity at issue or present evidence that he was legally insane. This Court repeated the *Stamper* principle that the state of knowledge was not sufficiently stable and constant and rejected the evidence holding, "in the absence of any claim of insanity, we find that the trial court did not err in denying Bowling's motion to introduce psychiatric evidence as to his mental state at the time of the offense." *Id.* at 173, 403 S.E.2d at 379.

The principle enunciated in *Stamper* resists turning to the evolving field of psychiatry when determining individual criminal responsibility. The Court would not take the determination of criminal responsibility from a stable and constant standard established by common law and place it under the discipline of psychiatry. The Court in *Stamper* focused on the unsuitability of psychiatry for determining criminal responsibility in the absence of an insanity defense. That principle applies to the expert testimony proffered in the instant case.

The defendant offered expert opinion that he was likely to interpret social situations differently than most people, that he had problems with impulse control, and that he was likely to jump to conclusions. He offered the opinions to support two defenses: that he acted in heat of passion upon reasonable provocation and not with malice; that he acted in self-defense upon reasonable belief that he was in danger of death or serious bodily harm. The defenses either excuse or reduce the degree of criminal responsibility. In one case, heat of passion, the defense reduces the crime from murder to manslaughter. In the other, self-defense, the defense excuses

or justifies the resort to violence and absolves of all criminal responsibility.

An opinion that the defendant suffered a mental disability that rendered him vulnerable to misunderstanding a social situation is the type of gradation or classification of the defendant's mental state too subtle and shifting to form the basis for excusing his use of deadly force. In this instance, the expert's opinion evidence was not relevant to prove that the defendant acted to defend himself from a threat of imminent bodily harm, or that he was provoked or acted in the heat of passion. Though this is not to say that expert testimony is never admissible in support of the defenses of heat of passion or self-defense.

█ ' The evidence offered by the defendant was inadmissible for a second reason. Taken in the light most favorable to the defendant, the evidence established neither defense for which he offered it. The defendant testified that he thought he was being robbed. He knew of the victim's reputation for violence, he was in a bad neighborhood, and he saw Harvey "reach" toward his waistband. He never saw a weapon, and the perceived threat did not come from the victim. It came from Harvey who was on the other side of the defendant. The defendant's version of the events did not support a claim that he acted in heat of passion upon reasonable provocation, nor did it support a claim that he acted in self-defense upon reasonable fear of death or serious bodily injury.

█ To justify the use of deadly force, the defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat. *See Yarborough v. Commonwealth,* 217 Va. 971, 978, 234 S.E.2d 286, 292 (1977) (mere reaching down toward his boot where defendant knew victim kept a knife was not such an overt act as would excuse the homicide). The defendant's evidence did not support a finding that he reasonably feared death or serious bodily injury from his victim and provided no evidence of an overt threat from the victim.

Furthermore, the force employed must be proportional to the threat posed. "[T]he amount of force used must be reasonable in relation to the harm threatened." *Diffendal v. Commonwealth*, 8 Va.App. 417, 421, 382 S.E.2d 24, 25 (1989) (citations omitted). The defendant first shot the victim while he was standing, next shot him in the abdomen and the chest while the victim lay on the ground, and finally shot him in the back of the head as he remained on the ground. The threat as described by the defendant did not justify the degree of force he used; the force exceeded any that could be excused or justified.

The defendant shot the victim first in the legs and then while on the ground in response to Harvey reaching toward his waistband. His action was not reasonable and was insufficient to raise either defense asserted: neither the defense of slaying in a heat of passion upon reasonable provocation, nor the defense of slaying in self-defense upon reasonable belief that it was necessary under the facts as they appeared to him. Without evidence to establish a defense, expert opinion in aid of it was properly excluded.

For the foregoing reasons, we affirm the trial court.

*Affirmed.*

LEMONS, Judge, with whom ANNUNZIATA, J., joins, concurring.

I concur in the result reached by the majority, but write separately because I find that the trial court's ruling was proper for different reasons.

The trial court excluded the testimony of Dr. Michelle Nelson. Peeples proffered that Nelson would testify that Peeples was mildly mentally retarded and that because of "the particular way that [Peeples's] mind is affected, he has extreme difficulty correctly interpreting social situations. He tends to miss the point exactly what is happening and reacts inappropriately."

The relevance of such proffered testimony could be related only to three issues: 1) the *mens rea* element of the charge of

aggravated malicious wounding; 2) heat of passion upon reasonable provocation which would negate the element of malice; 3) self-defense. For the reasons stated below, the trial court properly excluded the proffered testimony.

Peeples concedes that the evidence was inadmissible on the issue of *mens rea.* In *Stamper v. Commonwealth,* 228 Va. 707, 324 S.E.2d 682 (1985), the Supreme Court of Virginia clearly rejected diminished capacity as a defense in Virginia. Following *Stamper,* "[t]here is no sliding scale of insanity." *Id.* at 717, 324 S.E.2d at 688. Absent an insanity defense, expert testimony concerning *mens rea* is irrelevant to the issue of guilt. The trial judge properly excluded the proffered testimony of Dr. Nelson on the issue of *mens rea.*

Nonetheless, Peeples maintains that the proffered testimony should have been permitted because it was relevant to the issue of heat of passion that negates malice. Intent and malice are closely related; however, the concepts are not interchangeable.

"Heat of passion" refers to the *furor brevis* which renders a man deaf to the voice of reason. To establish the heat of passion defense, an accused must prove he committed the crime with "passion" and upon "reasonable provocation." *Caudill v. Commonwealth,* 27 Va.App. 81, 85, 497 S.E.2d 513, 514 (1998) (citations omitted).

This standard is objective in nature and requires that in order to negate malice, the passion produced must flow from "reasonable provocation." Here, the proffered testimony was offered to prove that Peeples responded reasonably to social circumstances as they appeared to him. As such, it was irrelevant to establish an objective "heat of passion" defense.

Finally, Peeples maintains that the proffered testimony was relevant to his claim of self-defense.

Self-defense in Virginia is an affirmative defense, the absence of which is not an element of murder. In making this plea a defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justifica-

tion or excuse that raises a reasonable doubt in the minds of the jurors.

The law of self-defense is the law of necessity, and the necessity relied upon must not arise out of defendant's own misconduct. Accordingly, a defendant must reasonably fear death or serious bodily harm to himself at the hands of his victim. It is not essential to the right of self-defense that the danger should in fact exist. If it reasonably appears to a defendant that the danger exists, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real. A defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted. These ancient and well-established principles have been recited to emphasize the subjective nature of the defense, and why it is an affirmative one. As Chief Justice Hudgins pointed out in *Harper v. Commonwealth,* 196 Va. 723, 731, 85 S.E.2d 249, 254 (1955): " 'What reasonably appeared to the accused at the time of the shooting, as creating the necessity for his act, is the test and not what reasonably appeared to him, provided it would so appear to some other reasonable person under similar circumstances.' "

*McGhee v. Commonwealth,* 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

The subjective belief of the defendant, without more, however, is insufficient to establish self-defense.

In dealing with apparent danger the jury should be told that before an accused is justified in making an attack with a dangerous weapon upon his adversary he must honestly believe and must have reasonable cause to believe that he was in imminent danger of losing his life or suffering serious bodily injury.... "The bare fear that a man intends to commit murder, however well grounded, unaccompanied by any overt act indicative of such an intention, will not warrant killing the party by way of prevention."

*Harper v. Commonwealth,* 196 Va. 723, 730–31, 85 S.E.2d 249, 254 (1955) (citations omitted). A defendant's "fear alone does not excuse the killing; there must be an overt act indicating the victim's imminent intention to kill or seriously harm the accused." *Smith v. Commonwealth,* 17 Va.App. 68, 71–72, 435 S.E.2d 414, 417 (1993).

The majority speaks alternatively of the *"Stamper* rationale" and the *"Stamper* principle" applying to this case. The rule of law established in *Stamper* is simply that diminished capacity is not a defense in Virginia. The Court noted that "[t]he shifting and subtle gradations of mental illness known to psychiatry are useful only in determining whether the borderline of insanity has been crossed." *Stamper,* 228 Va. at 717, 324 S.E.2d at 688. The majority articulates the *"Stamper* principle" as "that the state of knowledge [in psychiatry] was not sufficiently stable and constant" and confuses the holding in *Stamper* with one of the stated reasons for the holding. In the process the majority states both that the "principle applies to the expert testimony proffered in the instant case" and that "this is not to say that expert testimony is never admissible in support of the defenses of heat of passion or self-defense." The confusion between the holding and the reasoning in *Stamper* results in internally inconsistent propositions in the majority opinion.

The holding in *Stamper* addressed only the application of expert testimony to establish *mens rea.* Here, in claiming self-defense, the defendant implicitly admits the intentional nature of the act—the *mens rea*—but claims justification or excuse. *Stamper* does not consider the defendant's subjective state of mind supporting a plea of self-defense. The defendant's state of mind at the time of the shooting and how the circumstances reasonably appeared to him at that time are critical issues in determining self-defense. *See Jones v. Commonwealth,* 217 Va. 226, 229, 228 S.E.2d 124, 125 (1976). Expert testimony that does not usurp the jury's function is admissible in support of a plea of self-defense. *See Mobley v. State,* 269 Ga. 738, 505 S.E.2d 722, 723 (1998) ("expert testimony on battered person syndrome is admissible in murder cases

to assist the jury in evaluating the defendant's claim of self-defense"); *Smith v. State,* 247 Ga. 612, 277 S.E.2d 678 (1981); *see also State v. Nemeth,* 82 Ohio St.3d 202, 694 N.E.2d 1332 (1998) (expert testimony on battered child syndrome is admissible in murder cases in evaluating a defendant's self-defense claim). This is not such a case.

Peeples's version of the events as they subjectively appeared to him does not support a claim of self-defense. Without more than a scintilla of evidence to support such a defense, expert opinion in aid of it is properly excluded by the trial judge. Peeples said that he feared Paul (the victim) because of his reputation for violence, but testified that it was "Bubba," (Harvey) who, according to Peeples, was standing away from Paul, who made a "reaching" movement toward his waistband. Peeples saw no weapon in Paul's or Bubba's possession. Nonetheless, Peeples shot Paul not "Bubba." In order to justify the use of deadly force, Peeples must have reasonably feared death or serious bodily injury from his victim.

Finally, even if the refusal to admit Dr. Nelson's testimony was error, it was harmless. As non-constitutional error, the test we must apply is whether it "has affected the verdict." *Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991). A review of this record demonstrates that the proffered testimony could have had no effect upon the verdict. The use of excessive force clearly exceeded any claim to self-defense that Peeples may have asserted. "[T]he amount of force used must be reasonable in relation to the harm threatened." *Diffendal v. Commonwealth,* 8 Va.App. 417, 421, 382 S.E.2d 24, 25 (1989). Uncontradicted forensic evidence involving trajectory of the bullets was consistent with the victim's testimony that he was initially shot while standing, was shot again in the abdomen and the chest while lying on the ground, and finally was shot in the back of the head while lying on the ground. Even if Peeples had been threatened, he lost all justification he may have had by continuing to shoot the victim after the victim had been immobilized and posed no threat whatsoever. No reasonable juror could have found otherwise on this record. As the Supreme Court of Virginia

stated in *Rozier v. Commonwealth*, 219 Va. 525, 528, 248 S.E.2d 789, 791 (1978):

> Error committed in the trial of a criminal case does not automatically require a reversal of an ensuing conviction if the error is harmless. Code § 8.01–678. In the present case, the properly admitted evidence of defendant's guilt is overwhelming.... The evidence presents no reasonable possibility that the jury would have found the Commonwealth's case less persuasive had the ... evidence complained of been [allowed]. The jury could have reached no verdict, other than a verdict of guilty, that would have been consistent with the evidence if the objectionable evidence had been [allowed]. Hence, we hold that admission of the evidence complained of was harmless.

I find that the trial court properly excluded the proffered testimony of Dr. Nelson and that even if error did occur in the refusal to admit the testimony, the error was harmless. I would affirm the convictions.

BENTON, Judge, with whom ELDER, J., joins, dissenting.

The Commonwealth indicted and tried David Toran Peeples on charges of aggravated malicious wounding and use of a firearm in the commission of aggravated malicious wounding arising out of a shooting event that occurred when Peeples was sixteen years of age. I would hold that the trial judge erred in refusing to admit expert testimony in the jury trial regarding Peeples's mental state, which was offered to aid in his claim of self-defense.

I.

"As a general rule, a litigant is entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility." *Tarmac Mid–Atlantic, Inc. v. Smiley Block Co.*, 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995). "Evidence is admissible if it is both relevant and material," and it is inadmissible if it fails to satisfy either of these

criteria. *Evans–Smith v. Commonwealth,* 5 Va.App. 188, 196, 198, 361 S.E.2d 436, 441, 442 (1987). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." *Ragland v. Commonwealth,* 16 Va.App. 913, 918, 434 S.E.2d 675, 678 (1993). "Evidence is material if it relates to a matter *properly* at issue." *Evans–Smith,* 5 Va.App. at 196, 361 S.E.2d at 441 (emphasis added).

Peeples, who was sixteen years of age and mentally retarded, testified in his own defense. In contrast to the Commonwealth's witnesses, who testified that Peeples offered to sell marijuana to Paul Hicks and Richard Harvey and then shot Hicks after an argument, Peeples gave a different version of the events that occurred on the evening of August 24, 1996. He testified that the events began when Hicks and Harvey, both of whom he knew from his neighborhood, called him to them and then asked him to change a twenty-dollar bill. When Peeples displayed his money in the alley where they were standing, Hicks said, "We're taking this." Harvey said, "Yeah. That's right. We're taking it," and began reaching to his waist as if he had a gun. Peeples said he was scared and "knew [he] wasn't in a good situation." Peeples testified that he lived in a "bad" neighborhood, that Hicks had a reputation in the neighborhood for violence, and that other people had been robbed in the neighborhood. He knew "what [Hicks had] done in the past" and believed he was being robbed when Hicks demanded his money and Harvey reached into his waist. Believing that they intended to rob and shoot him, Peeples panicked, drew his gun, and pulled the trigger without aiming. He testified that Harvey then ran away.

Before trial, the Commonwealth made a motion *in limine* to exclude the testimony of Dr. Michelle Nelson, a psychologist, who would testify concerning Peeples's mental condition at the time of the offense. The trial judge reserved ruling on that motion. After Peeples testified at trial, Peeples's counsel proffered that Dr. Nelson would testify that Peeples was mildly mentally retarded. Peeples's counsel also proffered that Dr. Nelson would testify that because of "the particular way that [Peeples's] mind is affected, he has extreme difficulty

correctly interpreting social situations ... [and] tends to miss the point exactly what is happening and reacts inappropriately." Peeples's counsel argued that Dr. Nelson's testimony regarding the way in which Peeples mentally perceived social situations would be relevant to two issues: (1) whether Peeples acted under heat of passion rather than with malice when he shot Hicks and (2) whether the shooting was an excusable act of self-defense. The trial judge granted the Commonwealth's motion to exclude the testimony from the jury.

After the jury convicted Peeples of aggravated malicious wounding and use of a firearm in the commission of this offense, the trial judge dismissed the jury and set the matter for sentencing. At the sentencing hearing, Dr. Nelson testified that Peeples has a cognitive impairment and is mentally retarded with an IQ of 55. She also testified that "Peeples is likely to interpret social situations differently than most people.... [H]e has problems with impulse control, he's likely to jump to conclusions that other people wouldn't necessarily jump to." The trial judge sentenced Peeples, a juvenile, to twenty-five years on the aggravated malicious wounding charge and three years on the firearm charge. *See* Code § 16.1–272.

## II.

Self-defense is a recognized defense to a criminal charge in Virginia. *See McGhee v. Commonwealth,* 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

"Homicide [or wounding] in self-defense may be either justifiable or excusable. If it is either, it entitles the [accused] to an acquittal." In either case, he is deemed to be innocent and guiltless of any crime.

*Bailey v. Commonwealth,* 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958) (citations omitted). Assessing whether a particular act was committed in self-defense is distinct from determining whether its commission was intentional. In making a plea of self-defense, an accused "implicitly *admits the killing [or wounding] was intentional." McGhee,* 219 Va. at 562, 248

S.E.2d at 810 (emphasis added). Instead, the issue in a plea of self-defense is whether the accused's admittedly intentional act was either justifiable or excusable. *See id.; cf. Barrett v. Commonwealth*, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986) (stating that "[a] plea of self-defense and a claim of provoked heat of passion do not conflict with each other").

The "crucial issues" in a plea of self-defense are the accused's "*state of mind* and the circumstances as they reasonably appeared to [the accused] at the time of the shooting." *Jones v. Commonwealth*, 217 Va. 226, 230, 228 S.E.2d 124, 125 (1976) (emphasis added). The test of self-defense is whether the accused "reasonably fear[ed] death or serious bodily harm to himself at the hands of his victim." *McGhee*, 219 Va. at 562, 248 S.E.2d at 810. Thus, "[i]t is not essential to the right of self-defense that the danger should in fact exist." *Id.* However, when the accused fears that a person intends to murder or inflict serious bodily injury, and there is an " 'overt act indicative of such an intent, ... [the accused may be justified in] killing [or injuring] the party by way of prevention.' " *Harper v. Commonwealth*, 196 Va. 723, 731, 85 S.E.2d 249, 254 (1955) (citation omitted).

Unlike other tests used to evaluate whether conduct was legally "reasonable," the Supreme Court has emphasized that the test of whether an accused's fear was sufficiently reasonable to justify acting in self-defense is based upon the accused's *subjective* point-of-view rather than the reaction of an ordinary person to similar circumstances.[2] *See McGhee*, 219

---

**2.** For examples of other legal standards employing a standard of "objective" reasonableness, *see Gazette, Inc. v. Harris*, 229 Va. 1, 22–23, 325 S.E.2d 713, 729 (1985) (holding that, in determining whether an editor of a publication exercised ordinary care in a suit for libel, "a trial judge must decide, viewing the circumstances objectively, whether a reasonable and prudent editor should have anticipated that the words used carried an imputation necessarily harmful to reputation"); *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 212–13 (1984) (stating that, for the purpose of determining tort liability, a defendant has committed ordinary negligence if he or she failed "to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another' "); *Gilpin v.*

Va. at 562, 248 S.E.2d at 810 (noting the "subjective nature of the defense" of self-defense). "[W]hether the danger is reasonably apparent is always to be determined from the viewpoint of the [accused] at the time he [or she] acted." *Id.* Although most jurisdictions require that an accused's fear be both subjectively real and objectively reasonable before a homicide or wounding will be justified or excused on the ground of necessity, the Supreme Court has expressly rejected any objective component in Virginia's test.[3]

The Supreme Court has ruled as follows:

" 'What reasonably appeared to the accused at the time of the shooting, as creating the necessity for his [or her] act, is the test and *not what reasonably appeared to him [or her], provided it would so appear to some other reasonable person under similar circumstances.*' "

*Id.* (quoting *Harper,* 196 Va. at 731, 85 S.E.2d at 254) (emphasis added); *see Taylor v. Commonwealth,* 185 Va. 224, 227–28, 38 S.E.2d 440, 441 (1946) (holding that the trial judge erred in giving a jury instruction on self-defense which stated that the

---

*Commonwealth,* 26 Va.App. 105, 110, 493 S.E.2d 393, 396 (1997) (stating that, in assessing the legality of an investigative stop made by a police officer, the court must "view the facts objectively through the eyes of a reasonable police officer" to determine " 'whether the officer could have entertained an articulable reasonable suspicion that the defendant was involved in unlawful activity' ").

**3.** *See* Wayne R. LaFave and Austin W. Scott, Jr., *Handbook on Criminal Law* § 53 (1972) (stating that "the case law and statutory law on self-defense generally require that the defendant's belief in the necessity of using force to prevent harm to himself [or herself] be a reasonable one, so that one who honestly though unreasonably believes in the necessity of using force in self-protection loses the defense" but noting that "[t]here is a little authority that an honest belief in the necessity of self-defense will do; it need not in addition be a reasonable belief"); 2 Charles E. Torcia, *Wharton's Criminal Law* § 127 (15th ed. 1993) (stating that, in order to invoke the defense of self-defense, "[t]he test is whether a reasonable [person] under similar circumstances would have believed that he [or she] was in danger" but noting "[o]ther courts regard it as immaterial whether an ordinarily courageous [person] would or would not have believed that it was necessary to take life"); *see also* 40 C.J.S. *Homicide* § 132 (1991) (same); 40 Am.Jur.2d *Homicide* § 154 (1968) (same).

accused's fear should be evaluated from both the accused's subjective point-of-view and from the perspective of " 'a reasonable man placed under similar circumstances' ").[4] Thus, unlike in the context of determining *mens rea*, the accused's mental state and manner of perception are material issues to a plea of self-defense, regardless of whether an insanity defense has been raised. *See Craig v. Commonwealth*, 14 Va.App. 842, 844, 419 S.E.2d 429, 431 (1992) (holding that when a claim of self-defense is made "the acts must be viewed through the eyes of the person allegedly threatened"); *cf. Jacobs v. Jacobs*, 218 Va. 264, 267, 237 S.E.2d 124, 126 (1977) (in civil context, question of duress "is to be determined on consideration of the surrounding circumstances such as age, sex, capacity, situation, and relation of the parties").

Peeples contends that Dr. Nelson's testimony was relevant to prove self-defense. Peeples argues that his point of view, state of mind, and the manner in which he perceives events were material to the issue of whether he reasonably feared death or serious bodily injury at the time of the shooting and that Dr. Nelson's testimony was relevant to proving his mental condition and his perception of social situations. I agree.

In light of the subjective test for determining the reasonableness of an accused's fear in a plea of self-defense, the trial judge erred when he concluded that Dr. Nelson's testimony had no tendency to prove a material issue. The record indicates Dr. Nelson would have testified that Peeples had an

---

**4.** In *Taylor*, the Supreme Court apparently overruled its earlier decision to incorporate an objective "reasonable person" component into the test of self-defense. In *McReynolds v. Commonwealth*, 177 Va. 933, 15 S.E.2d 70 (1941), decided five years before *Taylor*, the Court stated:

It is not enough for the accused to say that he was terrified. There is no way by which we can gauge his state of mind. Moreover, one whose nerves were unstrung might have been frightened by facts which would not have troubled an ordinary [person] at all. It is for a jury to say whether they were reasonably sufficient *to warrant an ordinary [person] in believing that he [or she] stood in danger of serious bodily harm.*

*Id.* at 943, 15 S.E.2d at 74 (emphasis added); *see Taylor*, 185 Va. at 229–32, 38 S.E.2d at 442–43 (Holt, J., dissenting and Spratley, J., dissenting).

IQ of 55, was "likely to interpret social situations differently than most people," had "problems with impulse control," and was "likely to jump to conclusions that other people wouldn't necessarily jump to." This evidence is probative of Peeples's state of mind and manner of perception at the time of the shooting.[5]

In addition, Dr. Nelson's testimony was relevant to the credibility of Peeples's testimony that he actually feared serious bodily injury at the hands of Hicks and Harvey. Peeples testified that he feared he was being robbed by Hicks and Harvey and could possibly be shot. According to Peeples, Harvey reached for what Peeples believed was a gun. Peeples testified he responded by firing his gun in a panic. In assessing the credibility of Peeples's version of the facts, the jury had to determine first, whether Peeples had an honest belief that he was in danger, and second, whether, from Peeples's perspective, Harvey's reaching motion, along with the comments of Harvey and Hicks that they were taking Peeples's money, were "indicative of a present purpose to make the apprehended attack." *Stoneman v. Commonwealth*, 66 Va. (25 Gratt.) 887, 900 (1874). Dr. Nelson's expert opinion about Peeples's mental condition would have tended to prove whether Peeples's testimony represented a truthful account of his actual interpretation of his encounter with Hicks and Harvey.

The holding in *Stamper v. Commonwealth*, 228 Va. 707, 324 S.E.2d 682 (1985), excluding proof of a defendant's mental state with psychiatric evidence, has no application to this aspect of this case because, unlike in *Stamper*, the issue of Peeples's mental state was properly at issue. The applicabili-

---

5. Contrary to the Commonwealth's argument, the record does not indicate that Dr. Nelson's testimony would have directly addressed the "ultimate issue" of whether Peeples was reasonably afraid of death or serious bodily harm at the time of the shooting. Instead, Dr. Nelson's testimony was limited to testimony about Peeples's general mental characteristics and was merely probative of the ultimate issue of the subjective reasonableness of Peeples's fear. As such, this case is distinguishable from *Zelenak v. Commonwealth*, 25 Va.App. 295, 300, 487 S.E.2d 873, 875 (1997) (*en banc*).

ty of *Stamper's* rule of exclusion is limited to those criminal cases where the accused's mental state is not a material issue. Although the holding of *Stamper* is broadly worded and might be read as prohibiting the admission of expert psychiatric opinion regarding an accused's mental condition during the guilt phase of a criminal case unless insanity is raised as a defense,[6] the Supreme Court has sanctioned the use of such evidence for at least one other purpose. In *Greenfield v. Commonwealth,* 214 Va. 710, 204 S.E.2d 414 (1974), the Supreme Court tacitly approved the admissibility of a psychiatrist's opinion regarding the accused's mental state when the defense of "unconsciousness" had been raised. *See id.* at 713–14, 204 S.E.2d at 417–18 (noting that the defense of unconsciousness may be raised by "persons of sound mind"); *see also LeVasseur v. Commonwealth,* 225 Va. 564, 586, 304 S.E.2d 644, 656 (1983) (stating that "[w]hen ... no insanity defense is interposed, the defendant's mental condition is only relevant insofar as it might be probative of *a fact in issue"* (emphasis added)).

The Supreme Court's subsequent treatment of *Stamper* further indicates that psychiatric opinion is inadmissible during the guilt phase only when an accused's mental state is not properly at issue. In *Smith v. Commonwealth,* 239 Va. 243, 389 S.E.2d 871 (1990), the Court restated the holding of *Stamper* in more refined terms by noting that "[i]n *Stamper* ... we held that '[u]nless an accused contends that he was beyond [the borderline of insanity] when he acted, *his mental state is immaterial* to the issue of specific intent.'" *Smith,* 239 Va. at 259, 389 S.E.2d at 879 (emphasis added). *Smith,* like *Stamper,* was a case in which no insanity defense was raised and psychiatric evidence regarding the accused's mental condition was offered to prove whether the accused possessed the requisite *mens rea* of the crime charged. *See id.* at 258–60, 389 S.E.2d at 879–80.

---

**6.** *See Stamper,* 228 Va. at 717, 324 S.E.2d at 688 ("we hold that evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt").

Thus, *Stamper* does not compel the exclusion of Dr. Nelson's testimony as it pertains to self-defense because the issue of Peeples's mental state was properly at issue once he raised this defense. As the Supreme Court has noted, an accused's state of mind is a "crucial issue[ ]" to determining whether his or her fear of serious bodily harm was subjectively reasonable under the circumstances. *Jones,* 217 Va. at 228, 228 S.E.2d at 125.

### III.

The Commonwealth contends that if the trial judge erred, the error was harmless insofar as it related to the jury's finding of guilt. I disagree.

To be harmless " 'it [must] plainly appear[ ] from the record and the evidence ... that' the error did not affect the verdict." *Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01–678). "An error does not affect a verdict [only] if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." *Id.*

A review of the record in this case allows only the conclusion that the error in refusing to admit Dr. Nelson's testimony on the issue of self-defense was not harmless error as to the jury's finding of guilt. Peeples testified that he knew Hicks had a violent reputation. After Hicks and Harvey said they were taking Peeples's money, Peeples saw Harvey reaching for what Peeples believed was a gun. Peeples believed he was being robbed and feared he might be shot. Peeples testified that he started shooting because he "panicked." The facts surrounding the shooting are in dispute. Peeples testified that the shooting happened in one continuous incident and that he did not chase Harvey. Although the record contains evidence that clearly contradicts Peeples's claim of self-defense, "[o]ther evidence of a disputed fact standing alone, does not establish that an error is harmless." *Hooker v. Commonwealth,* 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992). A

harmless error analysis is not simply a sufficiency of the evidence analysis. *See id.* Even if "the other evidence amply supports the jury's verdicts, [the error is not harmless when] the disputed testimony may well have affected the jury's decision." *Cartera v. Commonwealth,* 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

We cannot say that if the jury had before it the erroneously excluded evidence and assessed Peeples's version of the events in light of that evidence, it would have reached the same verdict. We also cannot say that the only reasonable conclusion to be drawn from this evidence was that when Peeples shot Hicks, Peeples did not act in self-defense. Indeed, it is precisely the nature of the excluded testimony (that Peeples "tends to miss the point exactly what is happening") that makes it impossible to conclude that the error was harmless. Nothing in the evidence, not even the nature of the shootings, changes this. The jury could reasonably have believed, after listening to Dr. Nelson's testimony, that Peeples did not perceive the victim to be immobilized and posing no threat. This is the province of the fact finder and we should not, on appeal, make these factual judgments. Because the excluded evidence clearly tended to support Peeples's claim of self-defense, it does not "plainly appear" that the proffered evidence would not have affected the verdict.

For these reasons, I would hold that the trial judge erred in refusing to allow Peeples to introduce expert psychological testimony regarding his mental condition for the purpose of establishing whether he acted in self-defense. Accordingly, I dissent.